LEO KAUL *et al.* Appellees, *vs.* ROBERT LYMAN, JR.,
Appellant.

*Opinion filed June 18, 1913.*

1. WILLS—*the probate court is limited to testimony of the sub-scribing witnesses to the instrument.* The probate court, when a will is offered for probate, is confined to the testimony of the sub-scribing witnesses, and it cannot admit a will to probate where one of the two subscribing witnesses cannot remember any cir-cumstances connected with the transaction, although he admits he must have signed his name at the testator's request.

2. SAME—*the circuit court may probate will on any competent proof of its due execution.* On appeal to the circuit court from an order denying probate of a will the court is not limited to the testimony of the subscribing witnesses but may hear any evidence competent to prove the due execution of the will, including state-ments and admissions made by one of the subscribing witnesses that he had witnessed the will at the testator's request, there be-ing no denial by him of that fact but only a failure on his part to recollect the matter or any circumstance connected therewith.

APPEAL from the Circuit Court of Cook county; the
Hon. H. S. POMEROY, Judge, presiding.

PATTISON & SHAW, and HALL & HOLLY, for appellant.

LACKNER, BUTZ, VON AMMON & McGREGOR, and CAR-
ROLL A. TELLER, for appellees.

· Mr. JUSTICE FARMER delivered the opinion of the court:

The probate court of Cook county refused to admit to
probate the last will of Robert Lyman, deceased, and an
appeal was taken to the circuit court, where, upon a hear-
ing, the instrument was found to be the last will of the
testator and an order was entered directing it to be pro-
bated. From that order and judgment an appeal has been
prosecuted to this court by Robert Lyman, Jr., the son of
the testator.

Robert Lyman, the testator, died July 30, 1911, leaving no widow but leaving him surviving the appellant, his only son and heir-at-law. Appellant is a married man and resides in Salt Lake City, Utah. Deceased was engaged in buying and selling live stock at the stock yards in Chicago and had his office in the Exchange building. He left an estate consisting of real and personal property, which is stated in the petition for letters testamentary filed by the persons named as executors of the will to be worth not exceeding $15,000, but on the hearing in the circuit court there were statements made that it exceeded in value that amount. The will was executed September 11, 1908. By it the testator gave all his property to his cousin, Elizabeth C. Peirce, who resided with him, excepting $1000, which was to be paid to appellant as soon as practicable after testator's death, upon his giving a receipt in full for all demands and claims against the estate. Elizabeth C. Peirce, Leo Kaul and Clarence H. Callender were named executors of the will. The will is signed by the testator and is attested by two witnesses, J. E. Strader and Ed Russell, but there is no formal attestation clause written out, only the word "Witness" being written just before the signature of each witness. No question is made as to the soundness of mind of the testator. The only objection made to admitting the will to probate is, that the proof does not show it was executed in accordance with the requirements of the statute. On the hearing in the probate court only the testimony of the subscribing witnesses was heard as to the due execution of the will, but upon the hearing in the circuit court additional testimony was competent and was heard.

The circumstances under which the will was executed, as shown by the testimony of the subscribing witnesses, are as follows: J. E. Strader, one of the attesting witnesses, testified that he was engaged in the live stock commission business, with an office in the Exchange building. At the time the will was executed the testator had desk room in

the office of the witness. Callender, one of the executors, and Russell, the other witness to the will, also had desk room there. Strader testified that to the best of his recollection he signed the will in his office about two years before testator died. He was sitting at his desk when the testator asked him if he would witness a paper for him. The witness replied that he would and inquired what the paper was. Testator answered, "This is my will; I want you to witness it," and moved the paper so witness could write his name on it. The witness said he wrote his name on the paper and that it was the will of testator he signed. The witness asked testator why he did not have a lawyer write it, and he replied that he thought he could draw it up and say what he wanted to, better than a lawyer. The witness further testified that Russell was sitting in the corner of the other room, and testator called to him and said he wanted him to witness a paper for him. He did not remember just how he put it. Russell walked over to where testator was, and testator threw the paper on the sill of the window and said, "Ed, sign this; that is my will." Russell signed the paper and walked away and nothing further was said about the matter. The witness testified that when he signed the paper he was standing by testator's side, and when Russell signed, he (Russell) and testator were facing each other, not two feet apart. Russell testified that he was in Strader's office for four or five years prior to the testator's death, while the testator had office room there. When shown the will he recognized his signature as being in his handwriting but did not remember anything about having signed it. He stated that he sometimes signed letters at testator's request, but he always read them first; that he must have signed his name to the will without reading it, but he had no remembrance of it. He testified that he did not remember any of the occurrences testified to by Strader about signing the will and could not recall testator ever asking him to sign it.

George Loosemore, a witness for proponents, testified
that he and Charles Stock, about the year 1908, were hav-
ing a conversation in the hallway of the Exchange building
when Russell came up and said he had just signed a paper
in Lyman's office and did not know what it was, but sup-
posed it was his will.  Charles Stock corroborated Loose-
more's testimony as to the conversation between the two
when Russell came up, but states that Russell said, "Ed
Strader and I have witnessed Mr. Lyman's will," and fur-
ther said there was a blotter laid on the will and he did not
read it.  Another witness, Florence Haas, testified to a con-
versation she had with Russell in the office of Frank Keyes.
The witness was well acquainted with Mrs. Peirce and had
visited her at times, and Russell inquired how she was
getting along, and further stated that, some months before,
Lyman had called him over to his desk and said, "Ed, come
here and sign this for me, will you?" and when he inquired
what it was, Lyman replied:  "Oh, that is all right; it is
perfectly all right; you know me."  She further testified
that Russell said he signed it, and there was a blotter over
the paper,—just room enough for the signature.  Keyes de-
nied that this conversation ever took place in his office, and
Russell testified he did not remember this conversation
having occurred nor the one testified to by Loosemore and
Stock.  Other witnesses testified that testator stated he had
made his will, and to some of them he stated its contents.
The will itself, and the signature to it, were identified as
being in the handwriting of the testator.  In September,
1908, testator delivered to Kaul, one of the persons named
as executor, an envelope which he said contained his will
and on which was written, "Will of Robert Lyman.—Leo
Kaul, Esq."  This was shown to be in testator's writing.
Kaul kept the will in his possession until testator's death.

The wife of testator died many years ago, when appel-
lant was less than a year old.  Mrs. Peirce, the principal
beneficiary, was a cousin of testator and lived with him

after the death of his wife. She was an elderly lady and has died since the death of the testator. Appellant and his father became estranged prior to the latter's death, and several witnesses testified that testator told them he did not intend his son to have any of his estate except $1000; that he intended it to go to Mrs. Peirce, as she had materially assisted him in making what he had.

The due execution of a will is required by the statute to be proven by the attesting witnesses when application is made to admit the will to probate, except where one or more of the witnesses are dead, insane or have removed to parts unknown, so that his or their testimony cannot be procured. Here the two attesting·witnesses were alive and appeared and testified. One of them testified he had no recollection of signing his name to the instrument, and could not, therefore, testify that he saw the testator sign or that the testator acknowledged the instrument to be his will. The probate court properly refused to admit the will to probate upon the testimony of the witnesses to the will. Upon the hearing of the case upon the appeal to the circuit court that court was not confined to the testimony of the subscribing witnesses but could hear and consider any legitimate evidence that might be resorted to to establish a will in chancery. (*Mead* v. *Presbyterian Church,* 229 Ill. 526.) Appellant does not controvert this rule, but insists that the proof in the circuit court upon the appeal must be equivalent to the testimony of two subscribing witnesses, and contends the proof in this record does not meet that requirement. This contention is based upon the claim that the testimony of Stock, Loosemore and Miss Haas is either untrue or unreliable. We think it must be apparent that if their testimony is entitled to credit, it, together with the other facts and circumstances proven, abundantly meets all the requirements necessary to establish the due execution of the will. The witnesses named were disinterested and the circuit court believed them. There is nothing shown by the

record that so discredits their testimony as to justify this court in disregarding it. It is true, Keyes and Russell contradicted Miss Haas about what she testified Russell said in Keyes' office, and Russell had no recollection of the statement Stock and Loosemore testified he made to them, nor had he any recollection of the circumstances attending his signing the will, as testified to by Strader. But it does not necessarily follow that the witnesses who were contradicted testified falsely. The question of their credibility could better be determined by the court who saw and heard them than by this court, and that court having given their testimony credit, as evidenced by its judgment, we cannot say it was not warranted in doing so. There is no dispute that Russell signed the will. He testified he never signed papers for the testator unless requested to do so. In addition to this and the testimony of the witnesses the substance of which is above set out, it appears the will and signature to it were in the handwriting of the testator. That he was of sound mind and memory is not questioned. The will was delivered by the testator to the custody of one of the persons named in it as executor and remained in his custody until the testator's death, when it was produced for probate. Mrs. Peirce, the principal object of his bounty, was his relative and had lived with him for many years, and it was his desire, as shown by frequent statements made by him, that she should have his property. He was, and had been for some time, estranged from appellant. In *Gould* v. *Theological Seminary*, 189 Ill. 282, it was said: "In determining the question of fact involved in the inquiry as to whether the will was duly executed, we are to be governed by the same rules and presumptions which control the trial of other questions of fact." It seems to us too clear to admit of serious controversy that the proof in this case met all the requirements necessary to support the judgment of the circuit court. This subject has been so often and so fully discussed by this court in *Gould* v. *Theological Semi-*

*nary, supra, Mead* v. *Presbyterian Church, supra, Thompson* v. *Owen,* 174 Ill. 229, *In re Estate of Kohley,* 200 id. 189, and other cases, that we deem it unnecessary to enter upon a further discussion of the question. All the principles governing the decision of this case will be found decided in previous cases, and any extended discussion now would be but a repetition of what has heretofore been decided. It is true, as contended by appellant, that a will, to be valid, must be executed in accordance with the requirements of the statute, but that it was so executed was competent to be proved in the circuit court by any evidence competent to prove that fact in the same way that any other fact may be proved.

In our opinion there is, under the law and the evidence, no escape from the conclusion that the judgment of the circuit court was right, and it is affirmed.

*Judgment affirmed.*