(No. 11963.—Decree affirmed.)
WILLIAM FLYNN, Appellant, *vs.* FRANK FLYNN *et al.*
Appellees.

*Opinion filed April 17, 1918.*

1. WILLS—*when execution of a will is presumed to be in compliance with the statute.* Where the attestation clause of a will is complete, the signatures genuine and the circumstances are corroborative of due execution, there being no evidence disproving a compliance with the statute in any particular, it will be presumed that all the provisions of the statute have been complied with, although one of the attesting witnesses cannot recollect the execution of the will.

2. SAME—*testator is not required to sign will in presence of witnesses.* A testator is not required to sign his will in the presence of the attesting witnesses, and it is sufficient if he acknowledges the instrument in their presence as his free and voluntary act.

3. SAME—*mark evidencing signature may be made by an agent.* The testator's name, as well as the mark evidencing his signature to a will, may be written by an agent at the testator's direction, provided the testator acknowledges the will as his voluntary act.

4. SAME—*what testimony of an attesting witness is admissible.* Where a will is properly attested and the attestation clause shows that all the necessary formalities have been complied with, an attesting witness who has witnessed a number of wills but does not recollect attesting the will in question, though he admits his signature, may testify that he understands the formalities required, and that he would not have signed the will if the necessary questions had not been asked and if the will had not been executed in the proper way.

5. SAME—*when will signed by a mark may be probated although there is no evidence that testator made the mark.* Where the attesting witnesses testify to the proper execution of a will and the attestation clause states all the details required for such execution, including acknowledgment, the instrument may be admitted to probate although there is no proof that the testator personally made the mark evidencing his signature.

6. EVIDENCE—*what interest will disqualify a witness.* The interest which will disqualify a witness in a proceeding to probate a will must be certain, direct and immediate, showing that he will gain or lose as the direct result of the suit, otherwise his interest, if any, goes merely to his credibility and not to his competency.

7. SAME—*attorney should not appear as witness in his own case.* It is not in conformity with professional ethics for an attorney connected with a case to appear as a witness and no great weight should be given to his testimony, but the mere fact that the witness is a partner of the attorney conducting the case does not disqualify him, where there is no evidence that he is to share in the fees.

8. COSTS—*guardian ad litem fees may be taxed as costs in proceeding to probate a will.* The appointment of a guardian *ad litem* for minors is necessary in a proceeding to probate a will, and the circuit court, on appeal, has power to appoint a guardian *ad litem* and tax a reasonable fee for his services as costs.

APPEAL from the Circuit Court of Hancock county; the Hon. HARRY M. WAGGONER, Judge, presiding.

WILLIAM H. HARTZELL, BERT M. CAVANAGH, and EDWARD S. MARTIN, for appellant.

CHARLES J. SCOFIELD, for appellees.

ROSWELL B. O'HARRA, guardian *ad litem* for Louise Flynn.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Thomas Flynn, a resident of Hancock county, died on March 9, 1917, leaving an instrument purporting to be his last will and testament, dated August 6, 1913. After disposing of his property, both real and personal, in a certain manner, about which no question is raised in this proceeding, the document continued:

"In witness whereof I have hereunto set my hand by my mark and affixed my seal and caused this will to be duly witnessed this 6th day of August, A. D. 1913.

THOMAS X FLYNN. (Seal)
his        mark

Witness: Thos. F. Dunn, J. Paul Califf."

The attestation clause is as follows:

"The above and foregoing instrument, consisting of the foregoing page, was on the day and date thereof signed by Thomas Flynn, the above named testator, in our presence and declared by him to us to be his last will and testament and the execution thereof to be his free act and deed, and we thereupon, at his request and in his presence and in the presence of each other, signed our names hereto as witnesses to the said will; and we hereby declare that we believe the said Thomas Flynn, at the time of signing, executing, acknowledging and witnessing the said will, to be of sound mind and memory and that the same was his free and voluntary act and deed.

"Dated this 6th day of August, A. D. 1913.

THOS. F. DUNN,
Residing at Carthage, Illinois.
J. PAUL CALIFF,
Residing at Carthage, Illinois."

After the death of Thomas Flynn the writing was filed in the office of the clerk of the county court of Hancock county and duly probated. From the order admitting the will to probate William Flynn, the appellant herein, appealed to the circuit court of Hancock county, where, on a hearing before the chancellor without a jury, an order was entered admitting the writing to probate as and for the last will and testament of Thomas Flynn, deceased, and

finding that all the costs should be paid by appellant, including a fee of $25 to the guardian of the minor, Louise Flynn. From that order and judgment an appeal was prayed directly to this court, as the title to real estate is involved.

On a hearing of the case in the circuit court the proponents, in obtaining probate of the will, offered in evidence the affidavits of the two subscribing witnesses made when the will was probated in the county court and also put the two subscribing witnesses on the stand. J. Paul Califf remembered the details of the execution of the instrument and swore to all the formal requirements having been observed; that he was an attorney and prepared the will in his office and read it over to the testator, and then he and the testator went to the bank, where the other subscribing witness, Thos. F. Dunn, was assistant cashier; that the testator, in response to a question to that effect, stated that he wished Dunn and Califf to sign as attesting witnesses, and that they both signed said will in his presence. Califf further testified that Dunn wrote the name of the testator at the end of the will, and also wrote the words "his mark" around the cross-mark as a part of the signature of the will, and that this signature and the words "his mark" were in the handwriting of Dunn, and that the signature of the witness Califf was his genuine signature. He also testified that he had no positive recollection as to who made the cross-mark between the words "his mark" found on the will. The other attesting witness, Thos. F. Dunn, testified in the circuit court that he had no recollection of the circumstances or details connected with the execution of the will. He testified that the signature "Thomas Flynn" was in his (Dunn's) handwriting and that the words "his mark" were also in his handwriting, and that the name "Thos. F. Dunn" attached to the attesting clause was his genuine signature, and that the name "J. Paul Califf" was in the handwriting of Califf. He also testified, over objection, that he had signed a number of wills and was familiar

with what was required in attesting wills, and that he would not have signed the attestation clause unless the facts therein stated were correct. The contestant introduced no evidence on any point raised on this record.

The principal question argued on this appeal is whether or not the court erred in admitting the above document to probate as the last will and testament of Thomas Flynn on the evidence found in this record. It is contended by counsel for appellant that there is no proof that justified the trial court in holding that Thomas Flynn signed the instrument or that he directed any person to sign it for him; that the last paragraph indicated that the testator intended to sign this will by making his mark with his own hand, and that there is no proof in the record as to who made this mark. It is also contended by counsel for appellant that the testimony of Thos. F. Dunn, one of the subscribing witnesses, shows clearly that he had no recollection of any kind as to witnessing this will, and therefore the evidence is also deficient in this regard.

The attestation clause to the will covered all the requirements of the statute, and this court has held that such an attestation clause is *prima facie* evidence of the due execution of the will. (*Hutchison* v. *Kelly,* 276 Ill. 438.) We have also held that an attestation clause which the attesting witnesses to the will swear bears their signatures is competent evidence tending to establish the due execution of a will in chancery, when the only defect in the proof is that the subscribing witnesses are unable to recollect that all the formalities prescribed by the statute and recited in the attesting clause were actually complied with. (*Thompson* v. *Owen,* 174 Ill. 229.) In this last case numerous authorities are cited and reviewed to the effect, substantially, that the law for wise and obvious reasons requires wills to be executed with such precautions as will usually guard against fraud; that when the attestation clause is complete and the signature genuine and the circumstances corroborative of

due execution, and there is no evidence disproving a compliance in any particular, the presumption may be lawfully indulged that all the provisions of the statute were complied with, although the witnesses are unable to recollect the execution or what took place at the time. (See, also, to the same effect, *Gould* v. *Chicago Theological Seminary,* 189 Ill. 282; *In re Estate of Kohley,* 200 id. 189; *Webster* v. *Yorty,* 194 id. 408; *Elston* v. *Montgomery,* 242 id. 348; *Thompson* v. *Karme,* 268 id. 168; *O'Brien* v. *Estate of Rhembe,* 269 id. 592.) Under these repeated decisions of this court and the reasoning therein the conclusion necessarily follows, in view of the evidence heard in the circuit court corroborative in every way of the due attestation of this will by attesting witness Thos. F. Dunn, that the trial court ruled correctly in allowing the will to be probated, notwithstanding said attesting witness Dunn had no independent recollection, at the time he testified, as to the execution of the will.

Counsel for appellant's chief contention is that the will was not properly probated because there was no proof as to testator, Flynn, himself signing the will. In their argument they seem to concede that if it had been proved that the testator's name was signed in his own handwriting, by himself, the decisions of this court would justify, on such a state of facts, the probating of the will, but they argue that there is no proof here showing who placed the mark of the testator upon the instrument, and on that account the proof is not sufficient to make a *prima facie* case justifying the probate of the will. The argument of counsel for appellant seems to ignore the fact that a testator is not required to sign his will in the presence of the witnesses, and that due execution is had if he has acknowledged the instrument as his free and voluntary act and deed even though he signed it beforehand and out of the presence of the witnesses. In *Elston* v. *Montgomery, supra,* it was argued that the attestation clause reciting that the will was signed by

the testatrix was insufficient to make out a *prima facie* case of the due execution of the will. In that case a number of witnesses testified that in their opinion the signature of the testatrix to the will was not in her handwriting, while a number of other witnesses testified that it was her genuine signature. The court, in discussing the question of the weight that should be given to the attestation clause, said (p. 355): "While said clause recites that the instrument was signed by the testatrix it does not say that it was signed by her own hand or that it was signed in the presence of the witnesses. It does recite that she acknowledged it to be her act and deed in their presence and requested the witnesses to attest it. In our opinion, however, it would have made no difference even if the attestation clause had recited that the testatrix signed the will in the presence of the witnesses; if she acknowledged it in their presence to be her act and deed, proof of that fact was sufficient *prima facie* to establish the will, even if the recital that she signed it in their presence was untrue." Again, in the same opinion the court said (p. 358): "The clause in the will, 'I have hereunto set my hand and seal,' does not necessarily import that the testatrix had signed her name with her own hand. It became 'her hand' if her name was written by someone else at her direction, to the same extent as if she had written it with her own hand. It means no more than that she had signed her name, or caused it to be signed, to the instrument and her seal made. In either event the signature would be a valid signature." The attestation clause in the will now under consideration is more full and complete as to details than the attestation clause in the case of *Elston* v. *Montgomery, supra,* and it would seem, under the reasoning of this court in that case, that as the attestation clause to this will shows that the testator acknowledged the will to be his free act and deed and declared it to be his last will and testament, such a declaration is sufficient for *prima facie* proof as to the will being duly executed and attested,

even though Dunn wrote Flynn's name and Flynn signed the will by mark or the mark was made by someone else at his direction, because, as was said in the opinion just quoted, a will may be executed by the testator signing his name or by acknowledging the instrument as his will even though signing the instrument through someone else.

In *Morton* v. *Murray,* 176 Ill. 54, this court had under consideration the question of a signature of a person to a document by mark and said (p. 62) : "From an inspection of the original letter it would seem that the cross preceding Murray's name was placed there after the name was written, and while there was no direct evidence that he made this cross it was proved that he sometimes signed papers in that way." The document or will was held to have been duly executed by Murray. In this case the testimony of witness Dunn showed that the testator, Flynn, had signed papers in his presence at other times by making his mark. It is insisted by counsel for appellant that this testimony of witness Dunn was incompetent. In *Rardin* v. *Rardin,* 271 Ill. 216, this court assumed that evidence of a similar character was competent and attached to it some value. The opinion says (p. 219) : "The attestation clause contained all the particulars of a good attestation and one witness to the will testified to all the requirements of the law. The other witness testified that he saw the original and his signature to it was in his own handwriting, and that, although he did not remember the circumstances, he knew that he asked the testatrix if it was her will, because when witnessing a will he always went through the regular formalities and asked the necessary questions." The attesting witness Dunn in this case testified similarly that he understood all the necessary formalities required in the execution of a will, and that he knew he would not have signed this will as attesting witness if the necessary questions had not been asked and if the will had not been executed in the proper way. In our judgment this testimony was compe-

tent. Moreover, the attestation clause was already properly in evidence, and, as already stated, it shows that all the formalities necessary to the due execution of the will and its attestation were properly and fully complied with.

While this precise question involving the signing of a will by mark has not been passed upon by this court it has been in other courts. In *Hawkinson* v. *Oatway,* 143 Wis. 136, the name of the testator appeared to have been written in the handwriting of one of the subscribing witnesses. The testator's name was signed by mark in substantially the same manner as signed to the will here under consideration, the words "his mark" being written in between the first and second name and the cross-mark placed between the words "his" and "mark." The will had an attestation clause certifying to the signing of the instrument by the testator. There seems to have been no evidence as to whether the testator signed by making his mark or otherwise. The will was admitted to probate on the proof of the genuineness of the signatures of the attesting witnesses. The court said (p. 142) : "As to wills, however, the rule seems to be general, except for the decisions above mentioned, that the attestation itself is *prima facie* proof of all facts essential to due execution to which attesting witnesses could depose if present, including the authenticity of testator's signature, whether autographic, by mark or in handwriting of another, also his volition in signing, and his mental capacity and understanding of his act,"—and many authorities are cited, including several from this State, in support of this conclusion. The opinion then continues (p. 142) : "In view of this array of authority and the reasons underlying it we are not at all inclined to change the attitude of this court so long and so persistently declared. * * * An objection that a signature by mark is not within the general rule but should be supported by further proof is overruled by many of the cases cited. Under the reasons of the rule as stated, the attestation quite as much declares that the testa-

tor made the mark as and for his signature as that he wrote the letters spelling his name when that appears. Indeed, some courts which would require further proof of the authenticity of an apparent autograph hold it unnecessary for a mark, which has no individual characteristics, because of the impossibility of authenticating the latter by any but an eye-witness. * * * Our conclusion is, therefore, that from the evidentiary facts found by the trial court arises *prima facie* an inference in favor of the ultimate fact that the deceased executed the will as required by law. Such inference, being without contradiction, constitutes a preponderance of evidence and therefore supports the judgment."

The facts in this case are substantially the same as they were in the *Hawkinson case,* except that there apparently the subscribing witnesses did not testify to their signatures, while in this case the subscribing witnesses testified that their signatures were genuine. There was no proof in that case as to who made the mark and there is none in this. It would be an extraordinary situation to hold a will good when the attesting witnesses did not testify at the trial, and to hold in a case like this, where the attesting witnesses did testify to all these facts themselves and the attestation clause stated all the details showing a proper execution of the will, that the instrument should not be probated because the attesting witnesses could not testify that the testator personally made the mark. We think the reasoning in the decision in the *Hawkinson case* is sound and is in accord with reason and the weight of authority. To the same effect are *Scott* v. *Hawk,* 107 Iowa, 723; *In re Sullivan's Will,* 114 Mich. 189; *Stephens* v. *Stephens,* 129 Mo. 422.

As an added reason in this case why we think the proof as to the signing of the will by the testator should be held sufficient, the attesting witnesses also signed their names to the left of the testator's name and above the attestation clause. It seems plain that these names were written at that place by the witnesses to witness the signature

of the will by mark and not as a part of the attestation clause, which they also signed. This being so, it presents a strong argument in support of the conclusion that the testator signed the instrument by his mark as his last will and that they intended to witness his signing it by mark and not by his own signature. In *Roser* v. *Franklin,* 52 Am. Dec. (6 Gratt. 1,) 97; it was held that a will executed by mark was a good will even though neither of the subscribing witnesses saw the testator make the mark; that it was sufficient if he acknowledged in their presence that it was his will and stated that he desired them to sign as attesting witnesses. This conclusion is in accord with the reasoning of this court in *Elston* v. *Montgomery, supra,* and the authorities there cited.

Counsel for appellant rely upon the reasoning in *Greene* v. *Hitchcock,* 222 Ill. 216, and *Hill* v. *Kehr,* 228 id. 204, as in effect holding that on the facts found in the record here the will was improperly probated. Those decisions were rendered before the statute was changed as to what proof could be taken in support of the will in the circuit court. Under an amendment to the law on that question in 1909 it is manifest, under the reasoning of this court in later cases, that other evidence than that of the two attesting witnesses can be offered. Since the amendment to this law in 1909 the argument of counsel on this point is fully answered, considering the facts in this case, by what was said by this court in *Speer* v. *Josenhans,* 274 Ill. 237, and *Hutchison* v. *Kelly, supra.* The court said in this last case (p. 446) : "The probate of wills does not depend upon the recollection or even the veracity of subscribing witnesses. While the proponents are confined in the county court to the subscribing witnesses, in the circuit court, on appeal, they may prove the execution of the will by any evidence competent in chancery for that purpose." See, also, the reasoning in *Kaul* v. *Lyman,* 259 Ill. 30, where substantially the same conclusion was reached as to the admissibility of

testimony in the circuit court as was reached in the last two cases cited. The conclusion in all three of these cases is in accord with the conclusion we have reached here.

Counsel for appellant argue at length also as to the insufficiency of the evidence, because J. Paul Califf, one of the attesting witnesses, was the attorney who drew the will, and his partner, Charles J. Scofield, tried the case in the lower court and is the attorney for appellees in this court. Califf did not appear personally, either in the trial court or in this court, as an attorney for any of the parties to this litigation. Counsel for appellant do not argue that Califf's testimony is entirely incompetent, but they insist that under the circumstances, under the decisions of this court, it should be given little weight. We do not think Califf's testimony was incompetent. This court has held that the interest which will disqualify a witness must be certain, direct and immediate, showing that he will gain or lose as the direct result of the suit; that if the testimony does not show such direct, certain and immediate interest, his interest, if any, goes merely to his credibility and not to his incompetency. (*Wetzel* v. *Firebaugh*, 251 Ill. 190; *Bailey* v. *Beall*, 251 id. 577.) His interest here was not direct, certain and immediate. Even though a partner of the attorney in this case for appellees, it was not shown that he was to have a portion of the fees for trying this case. The evidence on this point is not definite and certain. There is nothing stated in the will indicating that any of the firm of which Califf was a member was to have anything to do with the probating of the will or advising anybody interested therein, as was the case in *Bailey* v. *Beall, supra,* where the executor was named in the will and a partner of the executor was an attesting witness, so that the fact here as to Califf's partner being the attorney in this case for some of the interested parties can only be considered, if at all, as going to the credibility of Califf's testimony. This court has held that while not unlawful it is not good prac-

tice or good professional ethics for an attorney connected with a case to appear as a witness in the same case; that we are not disposed to give any great weight to the testimony of such a witness who assumes the double burden of acting as solicitor in the case and furnishing the evidence necessary to its success. (*Wilkinson* v. *People*, 226 Ill. 135; *Grindle* v. *Grindle*, 240 id. 143.) This court has also said that when an attorney is connected with any lawsuit and it becomes apparent that he will be a necessary witness in the case on material questions he should at once withdraw from the litigation as an active attorney or solicitor connected therewith. (*Onstott* v. *Edel*, 232 Ill. 201.) Califf himself acted in accord with the reasoning of this court on such matters so far as he was personally connected with this litigation at any time after the will was executed. The situation as presented in this case on this point has never been considered or passed upon by this court, so far as we are advised. We have no doubt that Califf's actions in this matter are entirely in accord with professional ethics if he is not to share in the fees that his partner is to be paid for his services in connection with this litigation, and, as we have already stated, there is nothing in this record to indicate clearly whether or not he is so to share. If he is to share in such fees then we think his testifying is contrary to the spirit of our holdings on this question. One reason why an attorney should not testify in a case in which he is a solicitor is because he may be prejudiced by his interest in presenting the case to the court or jury largely because of the pay that he hopes to obtain by winning the case. If a partner of his is trying a lawsuit and the witness is to receive a part of the fees he would be influenced somewhat in the same way by his desire to win the lawsuit. If an attorney is to be a witness he ought to so withdraw from the case that he could have no possible interest financially in the result of the litigation. Counsel for appellees insists that when Califf testified first in this litigation

he had no idea that there would be any serious contest over the questions involved in his testimony. In any event, we do not think that his testimony is in any way contradicted, directly or indirectly, on material questions, by any evidence presented on the hearing in the circuit court.

Considering the entire record as it is before us, and having in mind all the objections raised by counsel for appellant, we are of the opinion that the evidence justifies the probating of the will, and the decree and finding of the trial court in that regard must be affirmed.

Counsel for appellant, however, further insist that even though the decree of the trial court is correct in this regard it is incorrect as to charging the costs of the guardian *ad litem* against appellant. They first insist that there was no proof made as to whether Louise Flynn, for whom a guardian *ad litem* was appointed, was a defendant, or whether she was a minor, or whether she had any interest in the case. The transcript of the record of the proceedings in the county court was introduced in evidence in the circuit court. From the order of the county court it appears that Louise Flynn was a minor and was interested in the proposed admission to probate of the said will. The guardian *ad litem* was appointed in the county court, and it was his duty to appear in the circuit court when the case was appealed to that court. The circuit court appointed the same guardian *ad litem,* and in view of the fact that the transcript of the record in the county court was presented on the hearing in the circuit court there was no occasion for the circuit court to hear any other testimony as to the minority of Louise Flynn or her interest in the proceedings. We think the state of the record was such as to authorize the circuit court to appoint a guardian *ad litem.* This court has held that it is the duty of any court in a proceeding to probate a will to appoint a guardian *ad litem* for all infant defendants made parties to such proceedings. (*Simpson* v. *Simpson,* 273 Ill. 90.) We have also held that under the present

statute a proceeding to probate a will is a proceeding *inter partes* and that all parties in interest should be made parties to the proceeding. (*Mosser* v. *Flake,* 258 Ill. 233.) Manifestly, Louise Flynn, a minor, having an interest in the proceedings, was properly made a party, and the court was required to appoint for her, as it did, a guardian *ad litem* to protect her interests.

While it is true, as insisted by counsel for appellant, that costs are not ordinarily taxed in this State unless authorized by the statute, the general rule has always been that the power to appoint a guardian *ad litem* to manage the defense of an infant is one which is inherent in every court of justice. (2 Sharswood's Blackstone's Com. book 3, *p. 427.) The appellant herein appealed this proceeding to the circuit court. Before he could proceed in such a way as to bind the infant minor, Louise Flynn, it was necessary that a guardian *ad litem* be appointed for her. We see no reason why the party who was seeking relief in the circuit court should not justly be required to pay the fees of a guardian *ad litem* which were incurred because of the action taken by the one who was seeking relief. It would certainly be unreasonable to hold that the guardian *ad litem* should be compelled to act as such without being properly compensated. The circuit court having the inherent power to appoint a guardian *ad litem,* and being required so to do before a hearing of the cause could proceed, it necessarily follows that the court could provide that a reasonable fee should be paid for his services to such guardian *ad litem.* Counsel for appellant concede that the decree only covered the costs in the circuit court. The decree of the circuit court on the question of costs was right.

We find no reversible error, and the decree of the circuit court will therefore be affirmed.        *Decree affirmed.*