IN RE ESTATE OF SARAH E. DANIELS, deceased.

No. 51955.

(Reported in 140 N.W.2d 163)

FEBRUARY 8, 1966.

698

Thomas L. McCullough, of Sac City, for objectors-appellants.

Johnson, Burnquist, Flattery & McCormick, of Fort Dodge, for proponent-appellee.

John A. Schulte, of Sac City, pro se.

SNELL, J.—This is an action contesting the probate of a will. By stipulation trial by jury was waived and trial was to the court. The case was triable in probate as a law action. Section 33, Iowa Probate Code, chapter 326, Laws of the Sixtieth General Assembly.

The trial court's findings of fact are binding on us if supported by substantial evidence. Citations unnecessary. See rule 344(f)1, Rules of Civil Procedure.

The only issue in the trial court was proper execution. The validity of the execution must be determined by the law in effect immediately prior to January 1, 1964. Section 279, Iowa Probate Code.

Except under circumstances not applicable here the controlling statute provides: "* * * wills, to be valid, must be in writing, signed by the testator, or by some person in his presence and by his express direction writing his name thereto, and witnessed by two competent persons." Section 633.7, Code of Iowa, 1962.

On May 25, 1964, an instrument purporting to be the Last Will and Testament of Sarah E. Daniels, deceased, was filed for probate in Sac District Court. For convenience we will refer to the instrument as the will.

The will provided for the payment of debts and expenses and made three separate bequests of $600 each. The remainder was devised and bequeathed to Lutheran Hospital of Fort Dodge.

Admission of the will to probate was objected to by collateral heirs of decedent.

The will was dated April 9, 1953. It bears the signature of Sarah E. Daniels. The will has an attestation clause reading as follows:

"On this 9 day of April, 1953, the foregoing instrument was in our presence signed and executed by Sarah E. Daniels and by her declared to us to be her last will and testament and we, at her request and in her presence and in the presence of each other have subscribed our names as witnesses thereto."

The attestation clause bears the signatures of "Mattie Bowen of Sac City, Iowa" and "Harley Stipp of Sac City, Iowa."

The authenticity of all signatures is admitted.

Trial of this case in district court was on October 19, 1964, more than ten years after the date on the will.

■ The will was prepared pursuant to decedent's request and directions by Harley Stipp, decedent's attorney then practicing his profession in Sac City. Mr. Stipp had been admitted to the practice of law in Iowa since 1936 and was experienced in the preparation and formal execution of wills. He was present at the time of the execution of decedent's will in her home. He had a present recollection of being in decedent's home for the purpose of executing the will. He had no present recollection of the detailed events surrounding the execution of the will. He testified:

"Q. (Mr. Johnson continuing) Now, you are acquainted with the signatures which purport to be on the instrument, are you not? A. Yes.

"Q. Do you know whether or not the signatures purporting to be on the instrument were affixed thereto while all the persons who did in fact sign the instrument were in fact in the presence of each other? A. Yes.

[Objections interposed]

"Q. How do you know that, Mr. Stipp? A. As I say, I don't remember it from the recollection of the actual execution, the events of the execution. I know it only because I never have drawn a will other than when all three were present and signed.

[Objections interposed]

"Q. In other words, what you have told the Court is that you have never supervised the execution of such an instrument without conforming to the requirements of the law in having all persons present at the time that they appended their signatures

to the instrument, is that correct, sir? [Objections interposed] A. Yes.

"Q. Is that correct, sir? A. Yes.

"* * *

"Q. And have you at anytime, including the time in question, ever supervised the execution of such an instrument without the witnesses and the testator all being present together and all signing the instrument in the presence of each other? A. No. [Objections interposed]

"Q. And in connection with the execution of this instrument, exhibit A, Mr. Stipp, were the witnesses all personally present at the time that all persons signed the instrument, to the best of your knowledge and recollection? [Objection interposed] A. I would say yes, based on this fact, that I never have drawn a will or attended the execution of one where the testatrix or testator and all of the witnesses did not sign at the same time. [Objection interposed]

"Q. Was the testator, Sarah E. Daniels, forced or coerced in any way whatsoever in the execution of the instrument exhibit A? A. No, she was not.

"Q. Were any threats made or any promises made to her to obtain her signature on the instrument? A. No.

"Q. To the best of your knowledge and recollection, was her execution of this instrument completely and fully voluntary? A. Yes."

To these several questions and answers timely objections and attacking motions were made. The court held the testimony admissible. We agree.

Mrs. Mattie Bowen, the other witness to the will, testified by deposition. She was nearly 90 years old, her health was "* * * not very good." She had been "doctoring" for five or six years and had been taking "five or six or seven different kinds of medicine" for a long time. She testified at length and in detail, much of it volunteered, about decedent, her own contacts with decedent, relatives of decedent and their help to decedent. Much of her testimony related to matters subsequent to the execution of the will, or to matters in no way germane to the issue before

us. She had been an upstairs tenant in decedent's house thirteen years.

To the extent that it is material she testified that the will was not signed in her presence by either decedent or Mr. Stipp. We quote:

"Q. I want to show you the paper here which is said to be the will of Sarah Daniels. A. I couldn't read it unless I had one of those things.

Q. Magnifying glass. Do you see your name on it? A. Uh-huh.

"Q. As a witness? A. Yes, that is my writing.

"Q. Do you recall the day that you signed the paper for Sarah Daniels? A. Do you mean—

"Q. Do you remember doing it? A. I remember doing it, yes, but I don't remember the day.

"Q. All right. Did this happen or did this take place in Mrs. Daniels' home? A. Yes, she told me quite awhile back that she had a notion to make a will and wanted to know if I would sign it. I said I would have to think about it, and so then I don't remember whether he called me down or whether she did, or whether she said whenever he come up for me to come down. I just can't remember. It's been 10 or 11 years ago. I don't just remember. But anyway I went down.

"Q. By 'he,' you mean Mr. Harley Stipp, the lawyer who was here in Sac City? A. Did I say 'he'?

"Q. Yes. A. Well, she asked me; he didn't ask me.

"Q. When you came down to the downstairs of the home, Mrs. Daniels was there, is that right? A. Yes.

"Q. And Mr. Stipp, was he there also? A. Yes, she was sitting on one side of the table and he was on the other and I was between them when he put the will down; I suppose it was the will. I didn't see what was on it, and he asked me to sign it.

"Q. You did sign it? A. Yes, I signed it. His name wasn't there nor hers wasn't there.

"Q. This is what I want to know about. Had Mrs. Sarah Daniels signed the will before you signed it as a witness? A. No, I signed the will. I was the first one to sign it.

"Q. Did Mrs. Daniels ever sign the will while you were there? A. No.

"Q. What happened after you signed your name to it? A. I got started out. I don't remember whether I was sitting down or whether I was standing up, but I started to go out, and she said, Mattie—that was my name and that was what she always called me—now, don't say anything to anybody about this, and I never did.

"Q. But you are certain that Sarah Daniels' signature or name was not on the will? A. I am certain, I am certain. I know she never. Of course, that is 10 years ago, and maybe she did write that good, but if you could see her handwrite on any of her checks she would write, and they wanted to know if I could remember them. I couldn't read them and no one else could.

On cross-examination she testified:

"Q. You do remember that you were asked to sign her will don't you? A. Yes, I was asked by her.

"Q. You knew that you were signing her will? A. Yes, Mr. Stipp said to me, this is Sarah's will.

"Q. Sarah asked you to sign it? A. Sarah never said: he was the one.

"Q. Sarah— A. I don't believe Sarah said anything about me signing. I think he said, this is Sarah's will.

"Q. Sarah was sitting right across the table— A. She was here and he was over there and I came between them.

"Q. You sat between them? A. (Nodded in the affirmative.)

"Q. Now, you had been asked some time previous to this by Mrs. Daniels to sign her will? A. Well, yes, she said that she was thinking about making a will.

"Q. And asked you if you would sign it? A. And she asked me if I would sign it.

"* * *

"Q. Did you look at it when you signed it? A. No, he just handed me the paper and said, this is her will, and I just wrote my name down and started to walk out, because I thought I had no other business there.

"Q. Did he show you where to sign? A. Yes.

"Q. Did he have a pen for you? A. Yes.

"Q. Did he hand you a pen? A. Well, I think so. He would have to, because I didn't have any pen.

"Q. Did he point out the line for you to use? A. Yes, he said, you sign right there, where I was to sign.

"Q. Did he keep his hand on the paper while you signed it? A. No, he did not.

"Q. Did you look at the paper before you signed it? A. I had to look at the line.

"Q. There was nothing on the line that you put your name on, was there? A. No, I couldn't have put my name there if there was.

"Q. Can you be sure now, Mrs. Bowen, that there wasn't anything on any of the other lines, any other signatures? A. No, Mr. Stipp's name wasn't on there nor Sarah's name wasn't on there. I would have seen their names written if it was on there, but it was not.

"* * *

"Q. Is there any question about the signature on this instrument that purports to be yours, your signature, Mattie Bowen, is that your signature? A. Yes, that is my signature.

"Q. That is your signature? A. Yes, sir.

"Q. Did you stand up or sit down to sign this? A. I stood up.

"Q. Beg your pardon? A. I stood up.

"Q. You stood up? A. I stood up, but I don't know what makes that any difference.

"Q. And you left as soon as you signed it? A. As soon as I signed it I started to walk out, and then that is when Sarah asked me not to say anything. .

"Q. How long would you say you were there altogether? A. Oh, I don't think I was there—oh, I wasn't there 10 minutes, because I didn't think it was any of my business.

"Q. Did you talk about anything else except the will? A. No, not a thing, and she never mentioned it to me afterward."

I. The testimony of Mr. Stipp was admissible. We find

no authority in Iowa to the contrary. He testified positively that he had never attended the execution of a will where the maker and all the witnesses did not sign at the same time.

Volume 57 Am. Jur., Wills, section 880, says:

"Course of Conduct of Subscribing Witness in Attesting Wills. It is a familiar practice for laymen as well as lawyers, as attesting witnesses to a will, where they have forgotten the circumstances of the execution of the will, to state their habit not to sign their names to an instrument as attesting witnesses unless the maker has signed or acknowledged the instrument in their presence, declared the instrument to be his will, and asked them to attest. The propriety of admitting testimony to this effect in evidence has been affirmed."

Volume 95 C. J. S., Wills, section 392, says:

"An attesting witness may be examined and permitted to testify, * * * as to relevant and material matters, such as the execution of the will, the identity of a certain paper or papers as the will, * * *. Where he does not remember the particulars of the transaction, he may testify as to his usual practice or course of business in such cases * * *."

Flynn v. Flynn, 283 Ill. 206, 119 N.E. 304, Ann. Cas. 1918E 1034, holds that evidence that witness would not have signed unless will was executed in proper way is admissible. See also Greene v. Hitchcock, 222 Ill. 216, 78 N.E. 614. In re Estate of Dyer, Okla., 282 P.2d 243.

■ II. An attestation clause "reciting the observance of statutory requirements as to the excution of the will, raises a presumption of the due execution of such will if proof is made of the genuineness of the signatures of the witnesses and testator. This is the general rule and so held in Iowa." In re Estate of Repp, 241 Iowa 190, 197, 40 N.W.2d 607, and cases cited. See also Flynn v. Flynn, supra, and In re Estate of Olson, 239 Iowa 1149, 1154, 34 N.W.2d 207.

For a discussion of presumption of due execution see In re Estate of Klein, 241 Iowa 1103, 42 N.W.2d 593.

■ III. The testimony of an attorney whose name appears as a witness that he would not have signed if the will had not been executed in required manner is sufficient to support a find-

ing that will was valid. In re Estate of Dyer, supra; 95 C. J. S., Wills, section 411.

As bearing on the sufficiency of evidence see In re Estate of Repp, supra, loc. cit. 196.

Section 622.24, Code of Iowa, 1962, provides:

"Subscribing witness—substitute proof. When a subscribing witness denies or does not recollect the execution of the instrument to which his name is subscribed as such witness, its execution may be proved by other evidence."

In re Estate of Olson, supra, was a will contest. There was an attestation clause. One of the witnesses denied his signature and said he had never seen the will before. The other witness did not recall the details incident to execution. There was evidence to prove the genuineness of the signatures. We held that proponent had established a prima facie case sufficient to submit the fact question to the trier of the facts, in that case as here, the court. Loc. cit. 1155 of 239 Iowa.

IV. The weight of the testimony, including the fact of the due execution, is for the trier of the facts. In re Estate of Olson, supra, loc. cit. 1155.

The rules as to credibility of witnesses are set forth in Iowa Uniform Jury Instructions published by Iowa State Bar Association. Instruction #1.5 Annotated.

Volume 95 C. J. S., Wills, section 411b(2), page 327, says:

"The question of the weight to be given the testimony of a subscribing witness in contradiction of the attestation certificate signed by him depends on the credibility of the witness and the circumstances of each particular case. While the testimony of attesting witnesses denying or impeaching the execution of the will is to be considered and may be sufficient in some cases to prevent probate, it is to be viewed with caution and suspicion, and is usually entitled to little credence. * * *."

V. The trial court found from the evidence that the will had been in fact properly executed. The will was admitted to probate and the objections thereto overruled. We find no reversible error.

The case is—Affirmed.

All JUSTICES concur.