IN RE ESTATE OF CARRIE MATHEWS.

No. 46364.

DECEMBER 14, 1943.

Paul E. Hellwege, Leonard S. Nelson, and Dyer, Jordan & Dyer, all of Boone, for appellants.

T. J. Mahoney, of Boone, and Frank Porter, of Ogden, for appellees.

SMITH, J.—The trial court admitted an instrument to probate that reads as follows:

*"Affirmation of Gift*

To WHOM IT MAY CONCERN.

BE IT KNOWN BY THESE PRESENTS that I, Carrie Mathews of Pilot Mound, Boone County, State of Iowa, by my own initiative and free will, do hereby give to my brother, David Adamson of Boone County, Iowa, in addition to gifts already made to him in the past, the sum of Five and 00/100 Dollars ($5.00) and do hereby give to my three brothers, Joseph Adamson, Andrew Adamson and Charles Adamson, all of Boone County, Iowa an equal share in the remainder of my property valued at about Six Thousand and 00/100 Dollars ($6,000.00) and consisting of bonds, mortgages, moneys, accrued and accruing interest, bank accounts, accounts, etc., all of which is to be their property to have and to hold forever.

FURTHERMORE, I do hereby order and direct that all parties who are indebted to me on the above valuable papers or otherwise shall pay and deliver to my three brothers Joseph Adamson, Andrew Adamson and Charles Adamson, or to their heirs, assigns, executors or administrators the several sums as they become due or payable.

IN TESTIMONY to the foregoing gifts, I hereunto set my hand and seal at Pilot Mound, Iowa, this third day of August 1926.

CARRIE MATHEWS

GLEN COREY
    *Witness*
LEROY WESTEEN
    *Witness"*

Contestants really presented but two questions: First, the instrument is not testamentary in character; and second, it was

not legally executed because the decedent is not shown to have known its contents and to have requested the witnesses to act as witnesses to a will. Various considerations and arguments are urged but the foregoing are the ultimate ones relied on.

The witnesses to the instrument were the cashier and assistant cashier of a bank. They testify that Carrie Mathews (hereinafter, for convenience, referred to as testatrix) signed it in their presence and that they signed it in hers. Corey says:

"Prior to the time the instrument was signed, other than asking me and Mr. Westeen to sign as witnesses, I had had no talk with Carrie Mathews about this instrument and when it was signed was the first time that I had seen it. * * * I have no idea where it was prepared or who did it."

On cross-examination he testifies he thinks the brother who came into the bank with her said, substantially: "Will you act as a witness to Carrie's signature?" It seems probable, though not entirely clear, that the brother was present in the directors' room of the bank when the signing took place. Corey called the other witness in from the front room to sign as the second witness.

There is no evidence showing who prepared the instrument. The testatrix made no statement as to its nature or as to her understanding of its purpose. The record indicates she was a woman of average intelligence and of sound mind. There is no issue of undue influence or mental incompetence, though two or three years later (March 20, 1929) she was adjudged insane and she thereafter remained under guardianship until her death, August 4, 1941, at the age of eighty-three years.

She was a childless widow. Her brother, Joseph Adamson, was her first guardian. Upon his death his son succeeded him and later became the administrator of her estate and the proponent and appellee herein.

There is no clear evidence showing what was done with the instrument immediately after it was signed. It was among her effects that came into the hands of appellee as guardian. After his appointment as administrator he filed it and another document (hereinafter referred to) and asked the court to determine whether either should be probated as the will of decedent. Sub-

sequently (after some evidence was taken) he filed a formal petition for the probate of the "Affirmation of Gift."

The other document referred to was also among the effects that came into the guardian's hands. It was as follows:

"WILL

Denver, Colorado,
December 20, 1920.

I, Carrie M. Mathews of Denver, Colo., being in good health, sound in both mind and body, in consideration of blood relationship and family ties, and being a widow and having no living children, do hereby give and bequeath to my five Brothers, John, David, Joseph, Andrew & Charles Adamson, all now of Pilot Mound, Iowa, or to those Brothers who are surviving at the time of decease, ALL of my personal property and belongings of whatsoever name and character, including money on deposit & Liberty Bonds, Numbered, 4,050,315-6,—Nos., 94804, 94864-65-66-67-68; also one, No. 2,668,540, now in the Vaults of the American Bank & Trust Company of Denver, Colorado.

Signed & witnessed this 20th. day of December, A.D. 1920.

CARRIE M. MATHEWS [SEAL]

We, the undersigned witnesses, do affirm that we saw the testatrix of this instrument, Mrs. Carrie M. Mathews, sign her name hereto in the presence of both of us and also we did sign the same in her presence and in the presence of both of us sign the same in her presence and in the presence of each other, this 20th. day of December, A.D., 1920.
Witnesses,

MRS. SARAH A. HOWARD [SEAL]
JOHN T. McCLURE [SEAL]"

At the time this earlier instrument purports to have been executed testatrix was a resident of Denver, Colorado. It does not appear when she thereafter became a resident of Boone County, Iowa.

The appellee made good-faith, but fruitless, efforts to find the witnesses to this earlier instrument. Their identity and whereabouts are unknown in the record. However, appellee and one of appellants testify to having knowledge of testatrix's signature and their belief that her signature to the so-called "will"

is genuine. Its execution is not otherwise proved in the record except for the attestation clause. There is, of course, no evidence as to the genuineness of the witnesses' signatures.

It will be observed the earlier instrument purported to bequeath the property therein referred to to testatrix's five brothers (naming them) "or to those Brothers who are surviving at the time of decease." Only her brother Charles survived her and he died about a week before this trial commenced. The administrator of his estate and his widow and children are the appellants here who objected to the probate of the "Affirmation of Gift." Under it they are entitled to a one-third interest while under the earlier instrument they might claim the entire estate; hence their appeal from the trial court's decision admitting the "Affirmation of Gift" to probate.

It has seemed necessary to set out the record thus fully in order to consider not only the text of the instrument itself but also the situation and circumstances of its execution.

I. We have here to determine whether the decision of the district court is supported by sufficient evidence. The action is not triable de novo on appeal. Sisters of Visitation v. Glass, 45 Iowa 154; Ross v. McQuiston, 45 Iowa 145; In re Will of Donnely, 68 Iowa 126, 26 N. W. 23.

Since the facts are undisputed in the record, we have only to inquire whether as a matter of law the conclusion drawn by the trial court from those facts is justified. Home Ins. Co. v. Fidelity-Phenix Fire Ins. Co., 225 Iowa 36, 279 N. W. 425, citing 5 C. J. S. 698, section 1656.

Appellants contend the instrument is not testamentary in character. In determining that question the court looks to the language of the document itself, viewed, if necessary, in the light of the circumstances of its execution. In re Estate of White, 209 Iowa 1210, 229 N. W. 705. It is to be presumed that a valid instrument was intended to be made. Saunders v. Saunders, 115 Iowa 275, 88 N. W. 329.

We have already set out the record in some detail. It may be admitted the language of the so-called "Affirmation of Gift" does not clearly express what the scholarly text writers like to call "animus testandi." But we have no difficulty in upholding the decision of the learned trial court.

We may dismiss any idea that the instrument can be given effect as evidence of a gift or conveyance in praesenti and inter vivos. If it is to be accorded any vitality at all it must be as a testamentary instrument. There is no record of its delivery or of the delivery of any property under it. Such delivery would have been necessary if a present gift or conveyance had been intended.

The facts that the instrument was signed and witnessed in substantially the manner of, and with the formality usually attending, the execution of wills, that it remained ambulatory in the possession of testatrix, that it provides for a small token gift to one brother "in addition to gifts already made to him in the past," and that it purports to dispose of all "the remainder" of testatrix's property to other brothers, "all of which is to be their property to have and to hold forever"—all these facts suggest quite convincingly that the instrument was intended to take effect at death, even though the words "devise" and "bequeath" and words of similar import are omitted.

The name given the instrument is not controlling. The absence of publication or an attestation clause is not fatal. In re Estate of Harter, 229 Iowa 238, 294 N. W. 357, citing In re Will of Hulse, 52 Iowa 662, 3 N. W. 734. The document is to be read in the light of human experience. People do not usually make present disposition of all their property, even to the legitimate objects of their bounty, taking into account benefits already bestowed, as testatrix did here.

The fact that she had some five or six years earlier made a will in which she disposed of her personal property and belongings to her five brothers or to those "who are surviving at the time of decease" is significant. Her brother David, entitled under the earlier instrument to share with the other survivors if he should survive his sister, had in the meantime enjoyed her bounty. It is entirely reasonable that she should conclude to change her arrangements and eliminate the "survival" requirement as to the others. By so doing she revoked her earlier will. Schillinger v. Bawek, 135 Iowa 131, 112 N. W. 210.

We are enumerating the considerations which favor the court's ruling, as we have only to inquire if there was evidence in favor of same. It is not necessary to determine whether we would

have arrived at the same conclusion. 5 C. J. S. 698, section 1656; Ross v. Ross, 140 Iowa 51, 117 N. W. 1105.

We hold that the record amply supports the court's finding that the "Affirmation of Gift" was testamentary in character and so intended by testatrix. The cases cited by appellants are not controlling here.

II. Much of what we have said is applicable to other arguments advanced by appellants. They urge that the instrument was not legally executed, that testatrix did not declare it was her will, and that there is no evidence she knew the nature of its contents or thought that by its execution she was revoking the Denver will.

The record shows testatrix was a woman of average intelligence. There is no claim she was incompetent or under any undue influence. The objections to probate suggest these issues but they were thereafter expressly withdrawn. She signed the instrument and knew her execution of it was being formally witnessed by two witnesses. We surely cannot assume she was ignorant of its provisions. Much less can we say the decision of the trial court is without support in the evidence.

The witnesses testify they saw testatrix sign. They signed in her presence. No special request or specific act or motion indicating acquiescence was necessary on her part. Hull v. Hull, 117 Iowa 738, 742, 89 N. W. 979, and cases cited. See, also, Burgan v. Kinnick, 225 Iowa 804, 281 N. W. 734.

Our conclusion is that the decision of the trial court be and it is affirmed.—Affirmed.

All JUSTICES concur.