IN RE ESTATE OF EVA L. HUSTON.

RICHARD H. PLOCK, Executor, Appellee, v. ROBERT ALEXANDER et al., Appellants.

No. 46983.

APRIL 9, 1947.

Stuart & Stuart, of Chariton, and Hicklin & Hicklin, of Wapello, for appellants.

E. S. Simpson, of Morning Sun, for appellee.

SMITH, J.—Appellants are heirs of decedent, Eva L. Huston. Though also named as legatees under her will, their participation in her estate as such would not equal what it would be as heirs; hence their interest in establishing its invalidity. The appellee is executor of her will.

The will was admitted to probate without objection. No appeal was taken from the order admitting it and no claim is now made of any irregularity in the proceedings. Administration of the estate was commenced by appointment of an executor, who has converted the assets (mostly real estate) into cash, preparatory to payment of legacies and distribution under the will.

In the course of administration the executor caused to be served upon all heirs a notice under section 11007(3), Iowa Code, 1939, now section 614.1(3), Code, 1946, limiting to one year from date of such service the right to commence action to set aside the order of probate. No such action was commenced, though within the limitation period an abortive effort was made to commence one, which failed because of insufficient notice.

The executor in his final report submitted a proposed schedule of distribution in accordance with the terms of the will. To this appellants objected on the ground the testatrix was mentally incompetent and under undue influence when the will was executed. They argue here that a distribution under the terms of the will "would [for that reason] be a wrongful and illegal distribution and not a proper accounting by the executor of the remainder assets of this estate." They insist they have the right to raise these issues in this way.

The executor's position is that original proceedings or appellate proceedings within the meaning of section 633.38 of the Code, 1946 (formerly section 11882, Code, 1939), "are exclusively the only methods of setting aside the order of probate of a will, or questioning the due execution of a will which has been admitted to probate."

I. The parties agree that determination of the case depends upon the meaning of the words "due execution" in said Code section 633.38, which provides:

"Wills * * * shall not be carried into effect until admitted to probate as hereinbefore provided, and such probate shall be conclusive as to the *due execution* thereof, until set aside by an original or appellate proceeding." (Italics ours.)

Objectors contend that "due execution" means merely the

mechanical process of signing, witnessing, and publishing; the executor claims the words include an assumption that testator was mentally competent and not under undue influence.

The case has been ably argued on both sides, though perhaps too much emphasis has been placed upon the technical or abstract meaning of the two words and not enough upon the necessary implications of the language of the statute as a whole. The section clearly provides the only method by which a will may be *"carried into effect."* The order *"*admitting the instrument to probate*"* is for the very purpose of making it *effective as a will.* This involves more than a mere finding that it has been properly signed and witnessed and the necessary formalities complied with in its preparation. When the purpose of the statute is considered it seems clear the words *"*due execution*"* must be given a meaning broad enough to recognize that the order of probate constitutes an *adjudication* that the instrument is the *will* of decedent, not merely that formal requirements have been complied with.

When an instrument is offered for probate proponent in effect asserts that it is decedent's will and asks the court to so find. He assumes the burden of proving compliance with certain technical, formal rules requiring signing, witnessing, and publishing. He does *not* assume the burden of negativing testamentary incapacity and undue influence, which, if present, would prevent the instrument from becoming decedent's will.

Mental capacity and freedom from undue influence are presumed. A contestant who denies their existence or asserts any fact that would render the instrument ineffective as a will, notwithstanding compliance with all formal requirements, assumes the burden of proof on such issue.

Mental incompetency and undue influence are in the nature of affirmative defenses that must be pleaded and proved by contestant. He may urge them at the probate hearing and if unsuccessful may appeal from the adverse decision; or he may allow the instrument to be probated without contest and later (within the statutory limitation period) may institute original proceedings to set aside the order of probate. But the instru-

ment, once admitted to probate, is adjudged to be the will of decedent and it remains in effect as such "until set aside by an original or appellate proceeding." We cannot conceive that an adjudication, the very purpose of which is to permit the instrument to be carried into "effect," can be said not to include the elements necessary to that purpose. The words "due execution" must imply every condition essential to an effective will.

The fact that mental incompetence and undue influence were not pleaded as defenses in the proceeding which resulted in admitting the will to probate is not material. A judgment determines not only matters in issue but also those which might or should have been alleged. Fulliam v. Drake, 105 Iowa 615, 619, 75 N. W. 479, and cases cited; Benedict v. Nielson, 204 Iowa 1373, 1377, 215 N. W. 658.

II. It must be admitted there are to be found in our opinions isolated statements which, removed from their context, seem to support objectors' contention. Two are heavily relied on in appellants' argument. In one, Fallon v. Chidester, 46 Iowa 588, 591, 26 Am. Rep. 164, 167, it is said:

"The probate of the will, under the statute * * * had the effect to establish its execution, and rendered it admissible as an instrument of evidence * * * and nothing more. * * * It did not establish the testamentary character of the instrument, *and give validity to a title based upon it.* The effect of the will and its interpretation, whereon titles under it rested, were not determined * * *. *These were matters for adjudication when rights and property were claimed under the will.*" (Italics as in appellants' brief.)

What was actually decided there, however, was that plaintiff, as heir of her father, having been born before he died but *after his will was executed,* could assert title to his real estate notwithstanding the terms of his will, probate of which had not been set aside. This was on the common-law principle that the birth of a child after the will is made has the effect of revoking it.

To the argument of defendant that the probate of the will was conclusive and therefore the will was valid until set aside

by proper proceeding, the opinion says: *"The premise of this proposition is correct,* but the conclusion is not admissible." (Italics supplied.) Then follows the language first above quoted.

The real holding, therefore, was that plaintiff's contention depended not on setting the will aside as invalid but on determining its legal effect by interpretation in the light of the circumstances. We need not express an opinion as to the soundness of that reasoning or attempt to justify all the language used in expounding it. We cannot, for example, subscribe to the broad, unqualified dictum that the probate of the will "did not establish the testamentary character of the instrument, and give validity to a title based upon it."

It is sufficient, perhaps, to say the case does not furnish authority for a holding here that the order of probate was not an adjudication of testatrix' mental competency and freedom from undue influence—conclusive until set aside. Those are matters that necessarily inhere in the order.

Maloney v. Rose, 224 Iowa 1071, 1075, 277 N. W. 572, 575, also relied on by appellants, involved a controversy between the respective heirs of a husband and wife who had made mutual and reciprocal wills. Each owned separate property. The husband died first and under his will his property went to his wife. After the wife's death her will was admitted to probate but her executor, in his final report, took the position that her will was ineffective, being the "expired portion of mutual and reciprocal wills," and that her estate should be distributed to her heirs as intestate property.

The husband's heirs, on the other hand, argued that, as the wife's will gave everything to her husband, and as he predeceased her, they, as his heirs, were entitled to the property under the so-called "antilapse" statute, section 11861, Code, 1939 (now section 633.16, Code, 1946).

The controversy became transformed into and was tried as an equitable proceeding for construction of the wife's will. In passing on the appeal, we used the language now relied on by defendants here:

"It has been the repeated pronouncement of this court that

an order admitting a will to probate decides nothing but its due execution and publication. In re Will of Tinsley, 187 Iowa 23, 174 N. W. 4, 11 A. L. R. 826. The adjudication admitting the will to probate being conclusive only of matters determined, the petition of the plaintiffs [wife's heirs] for a construction of the will * * * and a determination of property rights thereunder does not constitute a collateral attack on the judgment admitting the will to probate.''

As in Fallon v. Chidester, supra, the context in the Maloney case reveals that the language of the opinion is no authority for the contention made here. The case was held to be one for interpretation and not for a determination as to the ''due execution'' of the will. The same may be said as to the language in the cited Tinsley case.

Notwithstanding these (and perhaps other) cases in which language was used which seems to support appellants' contention, the language of many of our decisions unmistakably points the other way. (The italics appearing in the following quoted passages are supplied by us.)

In Lorieux v. Keller, 5 (Clarke) Iowa 196, 201, 68 Am. Dec. 696, 699, it is said:

''The question to be tried by the Probate Court in the first instance, and by the District Court, on appeal, is simply *whether the writing is the last will of the deceased,* and whether it was duly executed, and published by him as such. * * * The admission * * * to probate, decides no question, but that relating to its due execution and publication.''

· See, also, In re Estate of Sternberg, 94 Iowa 305, 308, 62 N. W. 734, 735, which quotes this language.

In Havelick v. Havelick, 18 Iowa 414:

''The Revision (§2329) declares that wills proved and allowed * * * *are to be carried into effect;* and such allowance shall be taken as evidence of the due execution of the same, unless set aside by an original or appellate proceeding * * *.''

In Murphy v. Black, 41 Iowa 488, 490:

"The court determined that the joint instrument should be admitted as duly executed. *That is, that the persons executing it were of sound mind, not under any undue influence, and the instrument was properly attested as a will.*"

In Niemand v. Seemann, 136 Iowa 713, 716, 114 N. W. 48, 50:

"Ordinarily the only matters necessary to be considered and determined on the [probate] hearing are whether there has been execution in accordance with the formalities prescribed by statute, *and whether the testator had mental capacity at the time of execution.*"

In Kelly v. Kelly, 158 Iowa 56, 61, 138 N. W. 851, 853:

"Thus it has been said by the Illinois court that the original probate of a will 'is not designed as a final and conclusive determination of the testamentary capacity of the testator upon all the evidence that may be produced. *The purpose is only to establish testamentary capacity prima facie* in order that the will may be recorded, the estate cared for, and administration proceed.' * * *

"In short, the accepted doctrine in jurisdictions having statutes similar to our own appears to be that admission of a will to probate originally without contest is a preliminary order or judgment *which effects a prima facie establishment of the instrument,* and gives the court and executor authority to proceed with the administration and settlement of the estate, but does not operate to cut off the right of contest in an original action within the statutory period of limitation. *This court is * * * committed to that construction of the statute.*"

In In re Estate of Zachary, 165 Iowa 309, 318, 145 N. W. 883, 887, we said:

"In such preliminary offer, without contest, the adjudication is only as to its due execution, *and prima facie determines as an incident to it that the testator was competent.*"

In Wendt v. Foss, 161 Iowa 122, 129, 140 N. W. 881, 884, it is said:

"The order admitting the will to probate is in effect a finding that the will was duly executed, *and was the testatrix's last will and testament.*"

We realize these various quotations are open to the same comment or qualification we have applied to those submitted in appellants' brief. Each must be read in the light of the issues involved. Some may be dictum. They indicate, in any event, the trend of judicial thought. It is impossible within the reasonable limits of an opinion to analyze the various cases at greater length.

Search of Words and Phrases for a discussion of the meaning of "due execution" yields Puritan Mfg. Co. v. Toti & Gradi, 14 N. M. 425, 430, 94 P. 1022, 1023, in which it is said (quoting from Cox v. Northwestern Stage Co., 1 Idaho 376, 380) :

"The 'due execution' of an instrument goes to the manner and form of its execution according to the laws and customs of the country, *by a person competent to execute it.*" (Italics supplied.)

See, also, 13 Words and Phrases, Title "Due Execution," 482. Surely, if a contract cannot properly be said to be "duly executed" if one or both contracting parties were incompetent, a similar construction should prevail in the case of a will.

III. Appellants concede that the procedure followed by them was neither "original" nor "appellate" within the meaning of the statute under discussion. No contention is made (as was made in Kelsey v. Kelsey, 57 Iowa 383, 10 N. W. 753) that their attack was in effect the timely commencement of an original action. They assume, on the contrary, that the administration is a mere continuation of the probate proceeding and that, notwithstanding it has not been appealed from or set aside, the order of probate can be ignored in the subsequent stages of the case, just as on final settlement of an estate parties may object to the payment of claims that have been already approved by the executor and allowed by the clerk. They cite In re Estate of Baker, 226 Iowa 1071, 285 N. W. 641.

The argument is not sound. The probate of a will, upon proper notice, with full opportunity to all interested parties to contest upon the hearing, with right to appeal from it or to maintain timely original proceedings to set it aside, is certainly not analogous to the allowance of a claim by an executor (or administrator) and clerk, without notice to legatees or heirs, and with no opportunity given them to object.

The admission to probate is not a mere intermediate order but an appealable one, designed for the very purpose of determining the course to be followed by the executor and court in the administration of the estate. Kelly v. Kelly, supra.

There are other possible fallacies in appellants' argument at this point. It is not so clear that the administration proceeding is a continuation of the probate hearing. See discussion in Crossan v. McCrary, 37 Iowa 684, as to the meaning of the word "administration." It might be plausibly argued that the probate proceeding ends with the admission, or denial of admission, of the will to probate and that administration is a new and different matter. This view is somewhat sustained by the statutory reference to a subsequent "*original* or *appellate* proceeding" which seems to assume the proceeding leading to the order of probate is concluded.

Nor is it clear that appellants' objections here pertain to a mere matter of "accounting." No complaint is made as to the executor's accounts or as to his conduct of the estate. Appellants seek rather to accomplish by indirection what we think can only be done directly, either by appeal from the probate order or by an original proceeding to set it aside.

As to these two direct methods there are statutory time limitations to protect those who must eventually rely on the order of probate of a will as a finality. But if heirs may question it, as here contended (after statutory bars have arisen) by a third method, i. e., by objecting to the distribution of the personal estate under the terms of the will, we see no logical reason why they might not be permitted to question the title to real estate based on the instrument, long after the statutory limitation periods have expired. We apprehend the profession would be sur-

prised, if not indeed shocked, by the announcement of such a rule.

It is suggested that there is logic in a statute making probate conclusive as to formal requirements but that notwithstanding mental capacity is presumed and not usually inquired into, "To make the order conclusive" on that issue "on such slight [evidence] or absence of evidence is ridiculous."

The answer is, of course, that the order is "conclusive" *if not set aside*. Ample opportunity is afforded every interested person to contest the issue if he so desires.

The industry of counsel has not revealed, nor have we found, a case in which a will was contested for mental incapacity or undue influence in the manner contended for here. We have tried to give the case study and attention commensurate with the sincerity and ability displayed by counsel in presenting it. The conclusion reached by the trial court is, we think, sound, and it is affirmed.—Affirmed.

WENNERSTRUM, C. J., and OLIVER, BLISS, GARFIELD, MANTZ, MULRONEY, and HAYS, JJ., concur.

HALE, J., takes no part.