In the Matter of the Last WILL and Testament OF Paul Sherman PRITCHARD, Deceased.

Dorothea A. PRITCHARD; Cynthia M. Frank; Suzanne M. Kempf; Deborah M. Pritchard, f/k/a Debbie Hough; Paul S. Pritchard; William D. Pritchard; Jenny M. Jones; and John E. Pritchard; Plaintiffs–Appellants,

v.

Mary Carolyn O'HARROW, Individually and as Co–Executor; Patrick John O'Harrow, Individually and as Co–Executor; Bridget Kathleen O'Harrow, a/k/a Bridget Kathleen Kairies; Mary Margaret O'Harrow; Maureen Carolyn O'Harrow Greenwald; Erin C. Corley; and Shannon Eileen O'Harrow, Individually, Defendants–Appellees.

No. 88–106.

Court of Appeals of Iowa.

April 25, 1989.

Don W. Burington and Joel J. Yunek of Laird, Burington, Heiny, McManigal, Walters & Winga, Mason City, for plaintiffs-appellants.

Erwin L. Buck, Britt, for defendants-appellees.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

OXBERGER, Chief Judge.

Plaintiffs appeal a district court judgment setting aside a jury verdict and admitting decedent's will into probate. Plaintiffs contend that: (1) the district court improperly reviewed the jury verdict and failed to give proper weight to the evidence supporting the verdict; and (2) there was sufficient evidence to support the jury verdict setting aside the decedent's will because of undue influence. Our review is for the correction of errors at law. Iowa R.App.P. 4. We affirm.

The deceased, Paul Pritchard, and his wife, Bess, had three children born of their marriage, John, William, and Mary. William died in World War II. John died in 1970 leaving a wife, Dorothea, and several children. These individuals are the plaintiffs in this case. Mary Carolyn O'Harrow, who is divorced, has seven children and she and her children are the defendants in this case.

Since 1959, Mary Carolyn and her children have resided in a duplex next to her parents. Mary Carolyn relied on her parents for financial support. Paul remained active in business and the stock market until shortly before his death. However, as Paul and his wife's health began to decline in the 1980's, Mary Carolyn became more active in taking care of her parents.

In 1981, Paul contacted an accountant concerning his financial affairs. In conjunction with his accountant's recommendations, Paul contacted an attorney in 1983 concerning his estate plan. Paul was hospitalized and underwent surgery on June 5, 1983. Bess was also hospitalized. On June 17, 1983, Paul and Bess executed their wills in the hospital. Mary was present during the execution. On June 27, 1983, Paul executed a codicil to the will.

In October 1984 Bess, then Paul, died. All of the grandchildren received distributions from Bess's estate and from Paul's annuity. The Pritchard children did not share in Paul's estate and they brought this suit challenging the will. The jury found a confidential relationship between Mary and Paul and rendered a verdict setting aside the will due to undue influence. The district court granted defendants' motion for judgment notwithstanding the verdict and plaintiffs' appeal.

■ The trial court's ruling of December 21, 1987, which is being challenged by plaintiffs on this appeal sustained defendants' motion for judgment notwithstanding the verdict. Iowa Rule of Civil Procedure 243(b) provides:

(b) If the movant was entitled to have a verdict directed for him at the close of all the evidence, and moved therefor, and the jury did not return such verdict, the court may then either grant a new trial or enter judgment as though it had directed a verdict for the movant.

The purpose of Rule 243(b) is to afford the trial court an opportunity to correct its error in failing to sustain a motion for directed verdict where the movant was entitled to a directed verdict at the close of all evidence and moved therefor and the jury did not return such verdict. *Meeker v. City of Clinton*, 259 N.W.2d 822, 827 (Iowa 1977) (citing *Dutcher v. Lewis*, 221 N.W.2d 755, 759–60 (Iowa 1974)).

■ The motion challenges the sufficiency of the evidence to generate a jury question. In determining whether a jury question was engendered when a party seeks a directed verdict, dismissal, or judgment notwithstanding the verdict, the trial court views the evidence in the light most favorable to the party against whom the motion was made regardless of whether such evidence is contradicted and every legitimate inference which may be reasonably deduced therefrom must be carried to the aid of the evidence and if reasonable minds can differ on the issue, it is for the jury. *Meeker*, 259 N.W.2d at 828 (citing *Schiltz v. Cullen–Schiltz & Assoc.*, 228 N.W.2d 10, 17 (Iowa 1975)). In determining this issue, this court views the evidence in accordance with the same principles required for review by the trial court. *Id.*

Our question is whether, viewing the facts in the light most favorable to the Pritchards, there is a genuine issue of material fact on the question of undue influence.

Undue influence must be such as to substitute the will of the person exercising the influence for that of the testator, thereby making the writing express, not the purpose and intent of the testator, but that of the person exercising the influence. It must operate at the very time the will is executed and must be the dominating factor.

*Matter of Estate of Davenport*, 346 N.W.2d 530, 532 (Iowa 1984) (citing *In re*

*Estate of Roberts,* 258 Iowa 880, 888, 140 N.W.2d 725, 730 (1966)).

The elements necessary to establish a finding of undue influence are:

(1) Susceptibility to undue influence;

(2) Opportunity to exercise such influence and effect the wrongful purpose;

(3) Disposition to influence unduly for the purpose of procuring an improper favor, and

(4) Result clearly the effect of undue influence.

*Davenport* at 532 (citing *Matter of Estate of Herm,* 284 N.W.2d 191, 200–01 (Iowa 1979)). More than a "scintilla" of evidence is required. *In re Estate of Cory,* 169 N.W.2d 837, 842 (Iowa 1969). Mental capacity and freedom from undue influence are presumed. *In re Huston's Estate,* 238 Iowa 297, 27 N.W.2d 26 (1947).

The evidence with which the Pritchards sought to show susceptibility is the decedent's failing health. However, our review of the record also reveals the decedent's "strong will" for decision-making and that he conducted sophisticated business transactions up until close before his death.

There can be no dispute that opportunity has been established. Mary was in the room when the will was executed. Mary lived in an adjoining unit to her parents since 1959 and received financial assistance from them. She was in close contact to the decedent throughout his last years.

Pritchards propose to establish disposition to influence through statements allegedly made by Mary implying that she was in control of the decedent's money. However, other evidence controverts this.

Pritchards argue the result of undue influence is that the Pritchard children did not share in the decedent's estate. However, each Pritchard child did receive $19,000 from the decedent's annuity, liquidation of his corporation and under decedent's wife's will.

Pritchards present mainly disputed circumstantial evidence to prove undue influence. Undue influence may be and usually is proven by circumstantial evidence. *Frazier v. State Central Savings Bank,* 217 N.W.2d 238, 243 (Iowa 1974). However, weak circumstantial evidence which at most raises the possibility of influence is not sufficient to support a finding of undue influence. *Davenport,* 346 N.W.2d at 532.

It is not sufficient that persuasion alone was asserted against the testator. The courts have rightly recognized that most persons assert some influence over others, through friendship or familial duties, which may have some tangential effect on their receiving a testamentary benefit. This influence is not tainted. Rather, undue influence must dominate the motives of the testator in executing his will. It must be equivalent to "moral coercion."

In order to support the burden of proof of undue influence, it is generally insufficient for the contestant to merely show inequality of distribution under the will, although that fact combined with other circumstantial evidence may support a verdict in contestant's favor. Likewise, a testator's physical or mental weaknesses is not sufficient to prove undue influence, although evidence of such weakness is admissible to show a tendency towards susceptibility to undue influence. It is also generally insufficient to show minimal acts of influence as evidence of undue influence. Rather, the contestant must show a continuing and persistent effort to unduly influence the testator which destroys the testator's free will.

*Davenport,* 346 N.W.2d at 532 (citing 1 S. Kurtz, *Kurtz on Iowa Estates,* § 4.45 at 175 (1981)). Mere suspicion, surmise, conjecture, or speculation is not enough to warrant a finding of undue influence, but there must be a solid foundation of established facts upon which to rest an inference of its existence. *Davenport,* 346 N.W.2d at 533.

We will not deny that Mary O'Harrow asserted some influence over the decedent through her role as his daughter and caretaker. However, the record fails to reflect that her influence was equivalent to

"moral coercion" which dominated the decedent's motives in executing his will. The decedent's will and method of distribution and decision-making was explained by the testimony of his lawyer and accountant. It is not hard to imagine that the decedent might feel closer to the O'Harrow children who grew up thinking of him as a father figure. The record does not reflect a continuing and persistent effort by Mary to unduly influence her father which destroyed his free will. We find no error in the trial court's setting the jury verdict aside. We affirm the trial court in all respects.

AFFIRMED.